UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDI-WEIGHTLOSS FRANCHISING
USA, LLC, *et al.*,

        Plaintiffs,

v.                                              Case No. 8:09-cv-2421-T-24MAP

KAMEL SADEK, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Medi-Weightloss Franchising USA, LLC, Physician's Health Management, LLC, Medi IP Licensing, LLC, and Medi-Weightloss Clinics, LLC (collectively, "Medi") filed a verified complaint seeking preliminary and permanent injunctive relief as well as damages against Dr. Kamel Sadek ("Dr. Sadek"), Allure Medi Spa and Wellness Institute, LLC ("Allure"), Bionic Inc. ("Bionic"), Arizona Wellness Center, LLC ("AWC Clinic"), Brandy Fair and Andra Fair for alleged violations of various agreements, which include provisions related to non-use, non-disclosure, non-competition, confidentiality, and post-termination IP restrictions (docs. 1, 3). Amongst other relief, Medi seeks a preliminary injunction enjoining Brandy and Andra Fair from continuing to operate Arizona Wellness Center Clinic ("AWC Clinic") in accordance with the non-compete terms in the parties' agreements, disclosing or publishing Medi's confidential information, using the word "Medi" in the name of any business or trade name for the Fairs' businesses, using the Medi-Program or Medi-System or any program confusingly similar to Medi's, soliciting individuals (customers, clients, consultants, patients, employees, etc.) of the Medi clinics formerly operated by or employing Brandy

or Andra Fair, using Medi's vendors and products or promotion material from Medi or its affiliates, using any of Medi's proprietary or copyrighted information, and competing unfairly with Medi in any manner whatsoever (doc. 1, pp. 52-53). Brandy and Andra Fair deny any wrongdoing and oppose the request (doc. 39). After consideration, I recommend Medi's motion for preliminary injunction be granted.[1]

   *A. Background*

As a franchisor of weightloss clinic businesses, Medi entered into agreements with Brandy Fair, Andra Fair and Bionic allowing them to open and operate weightloss clinics utilizing the Medi trademarks, products, practices, methods, information, and software (doc. 1, Exhs. A-D).[2] Specifically, Andra Fair executed a non-use and non-disclosure agreement with the stated purpose of discussing and evaluating a proposed business opportunity of mutual interest between Medi and Andra Fair (*id.*, Exh. A).[3] In connection with that purpose, the non-use and non-disclosure agreement states that Medi may disclose to Andra Fair certain confidential, technical, business and other information Medi desires Andra Fair to treat as confidential (*id.*). The non-use and non-disclosure agreement provides that the agreement will survive until such time as all confidential information disclosed in conjunction with the agreement becomes publicly known or generally available in the public domain (*id.*).

---

[1] The district judge referred the motion for preliminary injunction (doc. 3) for a report and recommendation. *See* 28 U.S.C. § 636 and Local Rule 6.01.

[2] Brandy and Andra Fair also agreed to confidentiality provisions provided in the operations manual and the terms of use agreements (*id.*, Exhs. D, E).

[3] The non-use and non-disclosure agreement dictates that Florida law shall govern and all disputes arising out of the agreement shall be subject to the exclusive jurisdiction of the state and federal courts located in or near Hillsborough County, Florida (*id.*).

Additionally, Brandy Fair and Bionic entered into franchise agreements with Medi as to two clinics, the Avondale Medi Clinic and the Bell Medi Clinic (doc. 1, B-1-B-3, C-1-C-3).[4] Brandy Fair and Bionic operated the Avondale Medi Clinic for 13 months and the Bell Medi Clinic for 10 months and hired Dr. Sadek as the medical director for both clinics. *See id.*, Exh. F. Thereafter, Medi terminated its franchise relationship with Brandy Fair and Bionic. Medi required Brandy Fair and Bionic to execute an agreement ("settlement agreement") in which they agreed to be bound by the post-termination confidentiality, non-solicitation and non-competition requirements (*id.*, Exh. H).[5]

After executing the settlement agreement and closing the Avondale and Bell Medi Clinics, Brandy and Andra Fair opened and began operating another clinic in the same location as one of their prior Medi clinics. *See* docs. 43, 44. Dr. Sadek attempted to run this clinic with the Fairs but later resigned due to the Fairs' continual use of the forms, medication, vitamins, program structure, procedures and methods the Fairs had received or learned as a result of their franchise relationship with Medi (doc. 44, ¶¶5-12). Andra Fair also filed the articles of incorporation for and opened the AWC Clinic, and the Fairs continued to operate their new clinics in substantially the same if not the exact same way as a Medi franchisee despite the termination of the franchise relationship with Medi (*id.*, ¶¶ 14-15 and doc. 42, Exh. I). Indeed, some patients of the prior Medi clinics went to the Fairs' new clinics for the same treatment regimen administered under the Medi program (*id.*, ¶16). Currently, Brandy and Andra Fair appear to be operating or working in conjunction with one or more

---

[4] Brandy Fair signed both franchise agreements on behalf of Bionic as either the CEO or President. The franchise agreements dictate Florida law will apply (*id.*).

[5] Brandy Fair signed the settlement agreement on behalf of herself individually and as President of Bionic. The settlement agreement dictates Florida law will apply (*id.*).

3

corporations, identified as AWCLOSS Corporation and A&E Wellness Corporation, to maintain a website for and operate the AWC Clinic (doc. 42, Exhs. N, O and doc. 55). As a result of these actions, Medi argues that Andra Fair has breached the confidentiality restrictions in the non-use and non-disclosure agreement (Count I); Brandy Fair breached the franchise agreements by operating the AWC Clinic (Count II); Brandy Fair breached the confidentiality covenants, competitive restriction, promotional materials restrictions and post-termination IP restrictions of the settlement agreement (Count IV); Brandy and Andra Fair breached the terms of use agreement and its restrictions relating to proprietary information and intellectual property (Count V); Brandy and Andra Fair misappropriated trade secrets (Count VI); Brandy and Andra Fair engaged in common law unfair competition (Count VII); Brandy and Andra Fair infringed and diluted Medi's trademarks in violation of the Lanham Act (Counts VIII and IX); Brandy and Andra Fair engaged in false designation of origin in violation of the Lanham Act (Count X); Brandy Fair and Andra Fair tortiously interfered with the contractual relationship between Dr. Sadek and Medi (Count XI); and Brandy Fair owes Medi past due fees and charges as a result of the breach of the settlement agreement (Count XIII). Accordingly, Medi seeks to enjoin Brandy and Andra Fair from committing any further violations.

In response, Brandy and Andra Fair simply deny they have been or are breaching any agreements entered into with Medi (doc. 39). They offer a general denial without specifics except to say that Medi has failed to provide any evidence of their involvement in any wrongdoing other than the statement of a franchisee who claims to have overheard something about the Fairs and that Medi has failed to prove that the Fairs are violating any agreement or conspiring to compete in a weight loss business (*id.*). On March 3, 2010, the Court conducted a hearing on the motion for

preliminary injunction and the Fairs' response thereto (doc. 54). Medi presented oral argument on the motion, but, although provided ample notice, Brandy and Andra Fair failed to appear at the hearing (docs. 37, 38, 54).

   B.  *Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

   C.  Discussion

      1. *Likelihood of success on the merits*

The first factor in determining whether a preliminary injunction should issue is whether Medi can show a substantial likelihood it will prevail on the merits of its claims. Based on the record before the Court, Medi has shown a substantial likelihood of success on the merits of its claims for breach of its competitive restrictions, breach of its confidentiality restrictions and covenants, and violations involving the use of its intellectual property.

*a. competitive restrictions*

Section 542.335(1), Florida Statutes, permits the enforcement of contracts restricting or prohibiting competition during or after the term of the restrictive covenant so long as such contracts are reasonable in time, area, and line of business. In Florida, restrictive covenants may only be enforced where, as here, the restrictive covenants are set forth in a writing signed by the person against whom enforcement is sought. Fla. Stat. § 542.335(1)(a). A party seeking to enforce a restrictive covenant must plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant and that the restriction is reasonably necessary to protect those legitimate business interests. Fla. Stat. § 542.335(1)(b) and (c). Legitimate business interests include trade secrets, as defined in Fla. Stat. § 688.002(4); valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers or clients; customer or client goodwill associated with a specific geographic location or specific marketing or trade area; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). If the party seeking enforcement of the restrictive covenant establishes its *prima facie* case, the party opposing enforcement then has the burden of establishing the contractually specified restraint is overbroad, overlong or otherwise not reasonably necessary to protect the established legitimate business interests. Fla. Stat. § 542.335(1)(c). Florida law requires courts to construe restrictive covenants in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement and prevents courts from employing any rule of contract construction requiring the court to construe a restrictive covenant narrowly, against the restraint or against the drafter where legitimate business interests have been established. Fla. Stat. § 542.335(1)(h). If valid, a restrictive covenant may be enforced by, but

not limited to, temporary or permanent injunctive relief. Fla. Stat. § 542.335(1)(j).

In this instance, Medi has shown its restrictive covenants are reasonable as to time. In Florida, a presumption exists that any restrictive covenant for six months or less is reasonable and for more than two years is unreasonable as to a former employee, agent or independent contractor. Fla. Stat. § 542.335(1)(d). Similarly, any restrictive covenant for one year or less is reasonable and for more than three years is unreasonable as to a former distributor, dealer, franchisee, or licensee of a trademark or service mark. *Id.* Here, the competitive restrictions last for a period of two years commencing on the effective date of termination or expiration of the franchise agreements and a period of two years commencing on July 25, 2009, for the settlement agreement (doc. 1, Exhs. B, C, and H). Thus, the restrictive covenants are reasonable as to time.

Similarly, Medi has shown the competitive restrictive covenants are reasonable as to area and line of business. The competitive restrictive covenants in the franchise agreements prohibit operation of a competitive business in any capacity at the site of the Avondale and Bell Medi clinics or through the practice, within twenty-five miles of the site of the Avondale or Bell Medi clinics, or within twenty-five miles of any other Medi-Weightloss Clinic business or Market Area in operation or under construction on the later of the effective date of the termination or expiration (doc. 1, Exhs. B, C).[6] The settlement agreement mirrors the prohibitions from the franchise agreements and

---

[6] As the term "competitive business" is used in the franchise agreements, that term is defined as:

> any business (other than a MEDI-WEIGHTLOSS CLINICS Business operated under a franchise agreement with us) or facility owning, operating or managing, or granting franchises or licenses to others to do so, any Clinic or other business or facility that offers physician monitored or non-physician supervised weight loss, weight management, nutritional or health products and services, any Practice Management Services or any other products or services that are the same or similar to the Products

7

prohibits operating a competitive business in any capacity at the Avondale and Bell Medi clinics or within twenty-five miles of the Avondale and Bell Medi clinics (doc. 1, Exh. H). These restrictions as to geographic scope and line of business are reasonable on their face and given the nature of Medi's business.

Medi has also shown it possesses legitimate business interests which warrant protection. Specifically, Medi seeks enforcement of its competitive restrictions to protect its ability to sell its franchises; its right to ensure continued compliance with its agreements by other franchisees; its maintenance of the strength of the Medi-System and the value of the Medi-Confidential Information; its maintenance of the specialized training it provides to franchisees and clinic managers; its significant relationship with existing and prospective customers; its association of the locations where the Fairs' competitive businesses are operating to Medi clinics; and the goodwill associated with its marks in the geographic region. Since Medi has established numerous legitimate business interests warranting protection, the burden now shifts to Brandy and Andra Fair to show the competitive restrictions are overbroad, overlong or otherwise not reasonably necessary to protect the established legitimate business interests. Fla. Stat. § 542.335(1)(c). The Fairs have failed to meet this burden and, in fact, offer no argument opposing Medi's contentions as to its legitimate business interests.

In addition to establishing the enforceability of its competitive restrictive covenants, Medi has further established a strong likelihood of success on its claim that Brandy Fair has breached the competitive restrictive covenants found in the parties' agreements. "For a breach of contract claim,

---

and Services (including Other Services) then offered by MEDI-WEIGHTLOSS CLINICS Businesses.

Florida law requires a plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Medi has presented evidence which tends to show a likelihood of success on each of these elements. First, Medi has provided valid franchise agreements and a valid settlement agreement signed by Brandy Fair (doc. 1, Exhs. B, C, H). *See* Fla. Stat. § 542.335(1)(a) ("A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought."). Second, Medi has shown Brandy Fair has involved herself in some capacity with the operation of a competitive business and may now be providing patients the Medi system in their homes thereby breaching both the franchise and settlement agreements (doc. 42, Exhs. A-O and doc. 44). Finally, Medi has shown it has suffered and will continue to suffer damage resulting from the breach of the agreements in the form of unwarranted competition, lost business, and confusion by potential and former customers (doc. 2, doc. 44). Accordingly, Medi has established a substantial likelihood of success on its breach of its competitive restrictions claims.

### b. confidential information and intellectual property restrictions

Additionally, Medi has shown a substantial likelihood of success on its claims relating to breach of the confidential information and intellectual property restrictions. Indeed, the non-use and non-disclosure agreement, franchise agreements, settlement agreement, terms of use and operations manual all include provisions restricting the use of confidential and proprietary information and the franchise agreements and settlement agreement include restrictions on the use of Medi's intellectual property (doc. 1, Exhs. A-H). As discussed above, Florida recognizes as legitimate business interests both trade secrets and valuable confidential business or professional information that otherwise does

9

not qualify as trade secrets. In Florida, a trade secret consists of information that (1) derives independent economic value from not being generally known to and not readily ascertainable by others who can obtain economic value from its disclosure or use and (2) is the subject of reasonable efforts to maintain its secrecy. *See* Fla. Stat. § 688.002(4). In an action involving alleged trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. *American Red Cross v. Palm Beach Blood Bank, Inc.* 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Information generally known or readily accessible to third parties cannot qualify for trade secret protection. *Id.*

As set forth more fully in its verified complaint, Medi has shown it possesses valuable confidential and proprietary information, trade secrets and other intellectual property warranting protection. *See* doc. 1. Further, Medi has demonstrated it takes extraordinary efforts to maintain the secrecy of its trade secrets and confidential and proprietary information. Indeed, Medi required the Fairs to continually agree to maintain the confidentiality of the trade secrets and other confidential and proprietary information they received as a result of their discussions regarding the possibility of operating a Medi franchise, of entering into a franchise agreement with Medi, and eventually terminating the franchise agreement with Medi. *See* doc. 1, Exhs. A-H. Medi has also shown that the Fairs have used and continue to use books, manuals, forms, medications, vitamins, and the program structure learned or obtained through the franchise agreements with Medi (doc. 44). Moreover, the record indicates the Fairs also obtained formulas from the same company Medi franchisees use and thereby held themselves out to be a Medi clinic (*id.* and doc. 2). Accordingly, Medi has shown it has a substantial likelihood of success on its claims relating to breach of the

confidential information and intellectual property restrictions.

### 2. Irreparable harm

As a prerequisite to the entry of a preliminary injunction, Medi must also establish it will suffer irreparable harm unless the injunction issues. *MacGinnitie,* 420 F.3d at 1240; *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. *Siegel*, 234 F.3d at 1176. Florida law provides that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). Neither Brandy or Andra Fair have attempted to rebut the presumption of irreparable injury to Medi. As such, the Court may presume Medi suffers and will continue to suffer irreparable harm due to Brandy and Andra Fair's violations of the enforceable restrictive covenants in the parties' agreements. Notwithstanding, Medi has shown it has and will continue to suffer irreparable harm if a preliminary injunction does not issue as to Brandy and Andra Fair. Namely, Medi has shown that if a preliminary injunction does not issue, it will have to compete with former franchisees and employees who agreed not to engage in such competition, will lose the exclusivity and confidentiality of its proprietary and confidential information, will suffer possible dilution and confusion associated with its intellectual property as well as its products and services, and will prevent Medi from enforcing its agreements with other franchisees. Accordingly, Medi has met its burden as to the irreparable harm prerequisite.

### 3. Balance of harm

Having demonstrated it will suffer irreparable harm, Medi must also establish that the threatened harm to it outweighs the harm a preliminary injunction may cause to Brandy and Andra Fair. *MacGinnitie*, 420 F.3d at 1240. Here, the balance of harm tips in favor of Medi. Indeed, Medi seeks to enforce valid restrictive covenants against Brandy and Andra Fair to protect its legitimate business interests. As noted above, Medi currently suffers and will continue to suffer irreparable harm in the form of competition with former franchisees and employees who agreed not to engage in competition, loss of the exclusivity and confidentiality of its proprietary and confidential information, and probable dilution and confusion associated with its intellectual property as well as its products and services.

In contrast, Brandy and Andra Fair do not contend they will suffer any harm if a preliminary injunction issues. Instead, they deny any wrongdoing and claim they have not violated any agreement with Medi. If in fact the Fairs were not engaging in activities which violate the restrictive covenants found in the parties' agreements, enforcement of the restrictive covenants would cause them no harm as they will remain free to continue on in that manner. Since, however, the record indicates they are operating a competitive business utilizing Medi's confidential information and marks, restraining the Fairs from engaging in activities which violate the valid restrictive covenants would not harm the Fairs because they freely entered into and agreed to be bound by the non-competition, non-use and non-disclosure provisions. Regardless, Florida law provides that courts must not consider any individualized economic or other hardship that might be caused to the person against whom enforcement of valid restrictive covenants is sought. Fla. Stat. § 542.335(1)(g). Accordingly, the Court need not consider whether enforcement of Medi's valid restrictive covenants

will require the Fairs to cease operating their competitive businesses or otherwise cause them economic hardship. Thus, as the Fairs have failed to show any other potential or actual harm they may suffer if a preliminary injunction issues, the balance of harm weighs in favor of granting a preliminary injunction to Medi.

### 4. Public interest

Finally, Medi must show the preliminary injunction would not disserve or be adverse to the public interest. *MacGinnitie*, 420 F.3d at 1240. Where an otherwise enforceable restrictive covenant exists, Florida law requires a court refusing enforcement of such provision on the basis that it violates public policy to specifically articulate the public policy violated. Fla. Stat. § 542.335(1)(i). Further, Florida law requires the court to find the public policy requirements it articulates substantially outweigh the need to protect the legitimate business interests established by the person seeking enforcement. *Id.* In this instance, Medi asserts entry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by promoting stability and certainty in business relationships, by enforcing non-compete covenants permissible under Florida law, by preventing confusion as to a trademark owner's rights to control the use of its marks, and by protecting confidential, proprietary and trade secret information of businesses. Brandy and Andra Fair do not refute those contentions. Thus, Medi has demonstrated that upholding the valid restrictive covenants would in fact serve rather than be adverse to the public interest and would not violate any public policy. Accordingly, the public interest considerations support Medi's request for entry of a preliminary injunction.

### 5. Bond

Though Medi has met its burden as to the prerequisites for entry of a preliminary injunction,

the Court may issue a preliminary injunction only if Medi provides security in an amount the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).[7] The burden of establishing a rational basis for the amount of a proposed bond rests with the party seeking security. *Contintental Group, Inc. v. KW Property Mgmt., LLC*, 2009 WL 3644475, at *6 (S.D. Fla. October 30, 2009) ("The 'burden is on the party seeking security to establish a rational basis for the amount of a proposed bond.'"). The determination of the amount of the injunction bond, however, lies within the sound discretion of the Court. *Carillon Importers, Ltd.*, 112 F.3d at 1127 ("The amount of an injunction bond is within the sound discretion of the district court) (citation omitted). Medi requests the Court set the bond at $10,000 while Brandy and Andra Fair argue $150,000 per Defendant would constitute a more appropriate bond. The Fairs, however, fail to offer any rational basis for that amount. Thus, given Brandy and Andra Fair's blanket denial of any wrongdoing or any affiliation with companies competing with Medi, a bond in the amount of $10,000 would provide adequate security to compensate Brandy and Andra Fair for any costs and damages sustained by them if wrongly enjoined or restrained.

*D. Conclusion*

A preliminary injunction is an extraordinary remedy to be used only when a party carries its burden as to the four prerequisites. *Four Seasons,* 320 F.3d at 1210. In this instance, Medi has carried its burden as to all four prerequisites. Accordingly, it is hereby

---

[7] S*ee also* Fla. Stat. § 542.335(1)(j) ("No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.").

RECOMMENDED:

1. Plaintiffs' motion for preliminary injunction (doc. 3) be GRANTED.

2. Defendants Brandy and Andra Fair be enjoined as follows:

    a. Brandy and Andra Fair, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not operate the Arizona Wellness Center, AWC, AWCloss, A&E Wellness Corporation or any other Competitive Business within twenty-five miles from the Avondale Medi Clinic, located at 10320 W. McDowell Road, Bldg. I, #9031, Avondale, Arizona 85392, the Bell Medi Clinic located at 4319 W. Bell Road, Suite 8, Phoenix, Arizona 85053, or any other Medi-Weightloss Clinics Business. A Competitive Business includes any facility owning, operating or managing, or granting franchises or licenses to others to do so, any clinic or other business facility that offers physician monitored or non-physician supervised weight loss, weight management, nutritional or health products or services, and Practice Management Services or any other products or services that are the same or similar to the products and services offered by Medi-Weightloss Clinics Businesses.

    b. Brandy and Andra Fair, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not disclose or publish to any party, or copy or use for such

party's own benefit or for the benefit of any other party, any of the Medi-Confidential Information. Medi-Confidential Information includes, without limitation:

    i.    Knowledge of operating results and financial performance for Medi-Weightloss Clinics Businesses other than those operated by Brandy or Andra Fair, the Medi-Weightloss Clinics System, and the know-how related to its use;

    ii.    Plans, specifications, size and physical characteristics of Medi-Weightloss Clinics Businesses;

    iii.    Methods in obtaining licensing and meeting regulatory requirements;

    iv.    Sources and design of equipment, furniture, forms, materials and supplies;

    v.    Marketing, advertising and promotional programs for Medi-Weightloss Clinics Businesses;

    vi.    Staffing and delivery methods and techniques for personal services;

    vii.    The selection, testing and training of Managers/Medical Directors and other employees for Medi-Weightloss Clinics Businesses;

    viii.    The recruitment, qualification and investigation methods to secure employment for employment candidates;

    ix.    Medi-Weightloss Clinics Advantage software including all programs, tools and materials contained therein, such as the proprietary Medi-Weightloss Clinics Electronic medical Records software and knowledge of the information tracked by such software;

    x.    All other computer software made available or recommended for Medi-Weightloss Clinics Businesses;

    xi.    Methods, techniques, formats, specifications, procedures,

information and systems related to and knowledge of and experience in the development, operation and franchising of Medi-Weightloss Clinics Businesses, including but not limited to patient flow estimates, growth patterns, expenses, and pricing modules;

xii. Knowledge of specifications for and suppliers of certain products, materials, supplies, furniture, furnishings and equipment;

xiii. Recipes, formulas, preparation methods and serving techniques for products and services;

xiv. Knowledge of operating results and financial performance of Medi-Weightloss Clinics Businesses;

xv. Information provided through Medi-Weightloss Clinics Business training, including but not limited to class presentations and handouts, video and audio presentations, WebNRs, Medi-Alerts, Medi-News, and in the field training;

xvi. Information obtained through Medi-Weightloss Clinics compliance audits;

xvii Information contained in the Medi-Weightloss Clinics Business Manuals (Start Up, Operations, and Physician's Manual);

xviii. Knowledge of Medi-Weightloss Clinics proprietary MIC injection and B6/B12 injection;

xix. Knowledge of the System and the know-how related to its use;

xx. Plans, specifications, size and physical characteristics for Medi-Weightloss Clinics Businesses;

xxi. All other computer software Medi-Weightloss Clinics, LLC makes available or recommend for Medi-Weightloss Clinics Businesses;

xxii. Medi-Weightloss Clinics Patient Package including all forms and sample forms provided by corporate.

c. Brandy and Andra Fair and their agents, servants, employees and attorneys and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not use any trademarks, service marks, trade dress or other designations or indicia which are likely to cause confusion, mistake or deception or suggest any affiliation between Brandy or Andra Fair and Medi.

d. Brandy and Andra Fair and their agents, servants, employees and attorneys and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not use the Medi-Marks, and any signs, slogans, symbols, logos, advertising materials, forms, products and other items bearing the Medi-Marks. The Medi-Marks include, without limitation, those marks with serial number 77,606,851; serial number 3,634,854; serial number 3,617,270; serial number 3,326,228; serial number 3,404,655; and serial number 3,384,764. *See* doc. 1, ¶¶ 22-23.

e. Brandy and Andra Fair and their agents, servants, employees and attorneys and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not use Medi's trade secrets and confidential business information, including but not limited to the Medi-System and the know-how related to its use. The Medi-System includes the proprietary,

physician-supervised weight loss, wellness, nutritional and weight management program, which operates using Medi's intellectual property and proprietary and confidential information.

  f. Brandy and Andra Fair and their agents, servants, employees and attorneys and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, shall not operate or do business under any name or in any manner that gives the general public the impression that Brandy or Andra Fair are in any way connected with Medi or that Brandy or Andra Fair have the right to use the Medi-Confidential information, Medi-Marks or Medi-System.

  g. Brandy and Andra Fair and their agents, servants, employees and attorneys and any other persons or entities who are in active concert or participation with them, including, but not limited to AWCloss Corporation and A&E Wellness Corporation, must cease of and remove the webpage: http://www.awcloss.com.

  h. Within fourteen (14) days, Brandy and Andra Fair shall return to Medi all copies of Medi's manuals, marketing materials, forms, customer lists, and other confidential written materials used in the operation of a Medi-Weightloss Clinics Business.

3. Plaintiffs be required to provide a bond in the amount of $10,000.

IT IS SO REPORTED at Tampa, Florida on March 11, 2010.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Susan C. Bucklew
 Counsel of Record